Coker *vs.* Birge.

9   425
f108 716

No. 77.—James Coker, plaintiff in error, *vs.* William S. Birge, defendant in error.

[1.] A nuisance is anything which worketh hurt, inconvenience or damage to another; as if one does an act, in itself *lawful*, which being done in a *particular place*, necessarily tends to the damage of another's property, it is a nuisance.

[2.] Where B was about to erect a livery stable, with a plank floor, on a public street in a city, upon his own land, for the purpose of keeping horses therein, within sixty-five feet of a public hotel, owned and kept by C, and C having applied for an injunction, alleging that the erection of the stable would cause irreparable injury to his property in said hotel, and result in the loss of health and comfort to himself and family, and in the loss of patronage to his hotel, in consequence of the unhealthy effluvia that will arise from the stable, the collection of swarms of flies, and the interminable stamping of horses therein: *Held*, that the erection of the stable at the place stated, would operate as a *nuisance* to the property of complainant, and that he was entitled to an injunction to restrain its erection.

Application for an injunction. Made to Judge Stark, at Chambers, and refused, December 23d, 1850.

The bill states that the complainant became the purchaser of the Griffin Hotel, on Broadway, in the City of Griffin, on the 12th day of November, 1850; that the property is chiefly valuable from the fact of its being a hotel, and that it had been occupied and kept open for that purpose since the year 1843, and

VOL IX 54

such was complainant's object in purchasing the property—the value of the property is stated to be $3000 a year. The bill alleges that the defendant, about the 20th November, 1850, commenced building a livery stable, with a plank floor, on a lot immediately west, and adjoining the premises of the complainant, which defendant purchased after the complainant went into the possession of the hotel—the said stable fronting Broadway, and within about sixty-five feet of his said tavern—the object of the defendant being to keep and board horses.

The bill alleges, that if the defendant be permitted to complete the said building, and appropriate it to the purposes designed, that the injury to complainant and his family, as well as to his property, will be irreparable; that it will result in the loss of health and comfort to complainant's family, of patronage to his hotel, and in a ruinous depreciation of the value of complainant's property, in consequence of the unhealthy effluvia that will arise from the stable, the collection of swarms of flies, and the interminable stamping of horses therein; that the complainant requested defendant to desist from erecting said stable on the said premises, which he refused to do.

The prayer of the bill is for an injunction against the erection of the building.

After argument had, Judge *Stark* refused to grant the injunction, and counsel for complainant excepted.

Alford and Moor, for plaintiff in error.

McCune, for defendant.

*By the Court.*—Warner J. delivering the opinion.

This was an application to the Chancellor for an injunction to restrain the defendant from erecting a livery stable, fronting Broadway-street, in the City of Griffin, on the adjoining lot to the complainant's hotel, and within sixty-five feet thereof. The complainant had purchased the property expressly for a tavern, for which purpose it had been used since the year 1843, and

was, at the time of the application for the injunction, in the use and occupation of the complainant as such; that the property is chiefly valuable from the fact of the hotel being erected on it, and being kept for that purpose ; that the defendant purchased the adjoining lot, on which he is about to erect the livery stable, after the complainant purchased the hotel and went into the possession of the same—the object of the defendant in the erection of said stable, with a plank floor, being to keep and board horses therein. The complainant also expressly alleges in his bill, that if the defendant be permitted to complete the said stable, and appropriate it to the purpose designed and intended, that the injury to him and his family, as well as to his said property, will be irreparable; that it will result in the loss of health and comfort to the complainant and his family, in the loss of patronage to his hotel, and in a ruinous depreciation of the value of his property, in consequence of the unhealthy effluvia that will arise from the stable, the collection of swarms of flies, and the interminable stamping of horses therein.  According to this statement of facts, (which, for the purpose of obtaining the injunction, must be considered as true,) is the complainant entitled to the relief which he seeks by his bill ?  The object of the bill is to restrain the defendant from erecting a nuisance on his own land.  What is a nuisance?

[1.] *Blackstone* defines a nuisance to be any thing that worketh hurt, inconvenience or damage.   3 *Bl. Com.* 215.   The same author defines a private nuisance to be, any thing done to the hurt or annoyance of the lands, tenements or hereditaments of another.   *Ib.*   Speaking of nuisance to one's lands, the learned commentator, after enumerating several examples, says, " And by consequence it follows, that if one does any other act, in itself lawful, which being done in that place necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do that act, where it will be less offensive.   With respect to other corporeal hereditaments, he continues, it is a nuisance to corrupt or poison a watercourse, by erecting a dye-house or a lime pit, for the use of trade, in the upper part of the stream; or, in short, to do any

act that, in its consequences, must necessarily tend to the preju- dice of one's neighbor.   So closely does the law of England en- force that excellent rule of Gospel morality, of doing to others as we would they should do unto ourselves."   3 *Bl.* 218.

: [2.] The maxim of the law is, *sic utere tuo ut alienum non læ- das.*   The legal proposition then is, that if one do an act, of it- self lawful, which being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance ; for it is incumbent on him to find some other place to do that act where it will not be injurious or offensive.   Taking the allega- tions in the complainant's bill to be true, the erection of the livery stable, by the defendant, on the adjoining lot to his tavern pro- perty, and within sixty-five feet thereof, fronting one of the most public streets in the City of Griffin, with a plank floor therein, will result in a ruinous depreciation of the value of his property, the loss of health to his family, and in the loss of patronage to his hotel, in consequence of the unhealthy effluvia that will arise from the stable, the collection of swarms of flies, and the inter- minable stamping of horses.

The erection of the stable, then, in the particular place stated, will work hurt, inconvenience, prejudice and damage to the com- plainant and his property, and is, therefore, in the eye of the law, a nuisance.   To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood.   It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.   *Catlin vs. Valentine,* 9 *Paige,* 576.

But the Court below appears to have been of the opinion, that all these anticipated injuries were merely prophetic on the part of the complainant.   The answer is, that the sworn allegations in the bill must be considered as a revelation of facts, so far as the judicial action of the Court was concerned.   Nor are we pre- pared to say, if we were at liberty to travel out of the record, that the injuries which the complainant expressly alleges, will necessarily result to his property, from the erection of the stable, in the place stated, are at all improbable or unreasonable.   If he had stood by and permitted the defendant to have erected his

stable, before making his application for relief, he would most probably have been too late, according to the ruling of this Court, in the *Water Lot Company vs. Brooks & Winter,* 5 *Ga. Rep.* 315. The allegations in the bill clearly make out a case of nuisance in our judgment, and the next question to be considered is, whether the complainant is entitled to relief in Equity, or whether he has an adequate remedy at Law ?  It is undoubtedly true, as urged on the argument, that it is not every case which will furnish a right of action against a party for a nuisance, which will authorize a Court of Equity to interfere by injunction.  There must be such an injury as, from its nature, is not susceptible of being adequately compensated by damages at law, or such as from its continuance or permanent mischief, must occasion a constantly occurring grievance, which cannot be otherwise prevented but by an injunction.  2 *Story's Eq.* 204, §925.  *Attorney General vs. Nichol,* 16 *Ves.* 341.

Is the injury here complained of such, as from its continuance or permanent mischief, must occasion a constantly occurring grievance ?  When the stable shall be erected, it will be permanent—the nuisance will continue to exist, not only from day to day, but from year to year, and the injury resulting from it will be constantly occurring.  How shall the complainant obtain adequate damages at Law ?  Shall he be required to traverse the whole country, to ascertain by the testimony of witnesses, the number of customers kept away from his hotel by the offensive effluvia arising from the stable, or the interminable stamping of the horses kept therein, even if it were possible for him to do so ?  Customers stop at his hotel, and in consequence of the annoyance caused by the nuisance, they never return again, and, by their report of it, in distant parts of the country, others are prevented from stopping there, and his business is ruined.  Will it be said he has an *adequate* remedy at Law to recover damages for this injury ?  To our minds, the difficulties which he would have to encounter in a Court of Law, would be insurmountable, to say nothing of the multiplicity of suits which would necessarily have to be instituted.  The bill makes just such a case, in our judgment, which, from the very nature of the injury, is not

susceptible of being adequately compensated by damages in a Court of Law—it is a permanent, continuing mischief, which cannot be effectually redressed but by an injunction. The injury is material, and operates daily to diminish the value of the complainant's property, and to diminish, if not wholly to destroy, the comfort of himself and family.

Let the injunction be granted, and the judgment of the Court below reversed.