## J. A. BURDITT AND ANOTHER v. SVANTE M. SWENSON.

What constitutes a nuisance is well defined. The word means, literally, annoyance ; in law, it signifies, according to Blackstone, " anything that worketh hurt, inconvenience or damage."

To constitute a nuisance, it is not necessary that the annoyance should be of a character to endanger health ; it is sufficient if it occasion that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.

It would seem that a livery stable in a town is not necessarily or *prima facie* a nuisance, but that it depends on whether from the manner in which it is either built, kept or used, it destroys the comfort of persons owning and occupying adjoining premises, or impairs the value of their property.

Where the defendants built and kept their livery stable, in a town, in such a manner that it was a nuisance to the plaintiff, who sued to enjoin the keeping of the stable in that place ; and the defendants did not propose to keep their stable differently from the manner in which they had been keeping it, nor to alter the construction of it, but insisted that it was well kept and properly constructed, and that it was not a nuisance ; and the jury found for the plaintiff, in general terms, thereby affirming that in the manner of its construction and the way in which it was kept, it was a nuisance ; upon which verdict, the Court below entered a decree requiring the construction of the stable to be

changed, and enjoining the defendants from keeping said stable in an uncleanly and filthy manner, &c.; this Court reformed the decree by perpetually enjoining the defendants from keeping their livery stable at that place.

Appeal from Hays. Tried below before the Hon. John Hancock.

Suit by appellee against appellants, commenced in Travis county, Feb. 28th, 1853. The petition was as follows:

Your petitioner, Svante M. Swenson, a resident citizen of the county and State aforesaid, brings this his suit against J. A. Burditt and Sherman Case, residents and citizens of said county and State ; and thereupon your petitioner states that on the 17th day of December, A. D. 1850, he purchased lot No. 4 in block No. 84, fronting on the east side of Congress Avenue in the city of Austin, and that during the year 1851 he erected and fitted up a store-house on said lot, where he opened and kept from thence hitherto, and still keeps a general assortment of goods, wares and merchandise, consisting of all kinds of dry and fancy goods, jewelry and groceries, furniture and upholstery ; that, prior to the grievances hereinafter complained of, your petitioner had made extensive additions to his said store-house, and covered the lot aforesaid with spacious and expensive buildings, for the purpose of carrying on said mercantile business, for which the said buildings are alone suited. Your petitioner's property aforesaid is of great value, to wit : the value of seven thousand dollars. Your petitioner further represents, that ever since the establishment of his said store-house, the same has been much resorted to by ladies and gentlemen, who came to purchase goods and supplies from your petitioner, and who, in approaching said store and returning therefrom, had to pass along the usual side-walk upon the east margin of said Congress Avenue. That about the 25th of November, A. D. 1852, and whilst your petitioner was engaged in a profitable business, with a full supply of goods, &c., on hand, the said defendants commenced building a

large livery stable upon lot number 3 in said block, and immediately south of and adjoining the premises of your petitioner, and which said lot was purchased by said defendants immediately preceding their commencing to build said stable; that whilst the defendants were erecting said stable, your petitioner repeatedly remonstrated against the same, and pointed out the great injury which would thereby result to your petitioner, and requested them to desist from building the same, which they declined and refused to do, and proceeded to complete the same. The said stable is situated on and fronts upon the very margin of said Congress Avenue, and extends back nearly the whole depth of your petitioner's store. Your petitioner further represents that, on or about the tenth day of January last, the said defendants opened their said stable to the public and introduced therein all sorts of horses, mules and jacks, which they still continue to board and keep; that the main and only entrance to said stable is immediately upon the margin of said avenue, and within a few feet of the entrance into your petitioner's store; that the defendants are in the habit at all times, both early and late, of introducing a great number of carriages, horses and ox-wagons into said stable through the entrance thereof, and of keeping said horses and carriages standing for a great length of time in said street and upon said side-walk, thus blocking up the passage to your petitioner's store and diverting his customers therefrom; that the constant stamping of horses and tramping of the ground in front of said stable, causes great clouds of dust to be blown and carried into your petitioner's store to the great damage of his goods; that the said stable is kept in a very uncleanly condition, and that the defendants take from the same large quantities of manure and other filth and deposit the same in the back part of the stable lot, and immediately in front of some of the windows of your petitioner's storehouse; that said manure and filth has already accumulated to such an extent, that it now causes an unhealthy and disa-

greeable effluvia, exceedingly offensive and prejudicial to your petitioner and those under his employment. And your petitioner avers that this evil will be greatly increased as the weather becomes warmer ; that during the summer great collections of flies will be induced and generated by such filth, and which will necessarily infest the store of your petitioner to the great damage of his goods.

Your petitioner further represents to your Honor, that, prior to the erection of said stable, he had effected insurance to the amount of twelve thousand dollars and upwards in the city of New York, upon certain goods and merchandise in his store contained, and which insurance still continues ; that in obtaining such insurance he described the character and location of his said store-house, as well as that of the buildings then existing near the same on the adjoining lots, and that, owing mainly to the fact that their distance and position rendered the danger of fire comparatively remote, he was enabled to obtain said insurance upon reasonable terms. Your petitioner fears that, under these circumstances, should his goods or store-house he destroyed by fire, originating or caused by said stable, his right under said policy of insurance may be lost, inasmuch as said stable has been built subsequent to said insurance. Whether this would be so or not your petitioner fears such a result ; and in any event the cost of his insurance will be much increased, when the existence of said stable, situated as it is in a very few feet of petitioner's store, is known by the insurance office.

Your petitioner avers that the danger of fire to his store-house and goods has been greatly increased by the erection and occupation of said livery stable, and as one evidence of this fact, your petitioner states that there is no fire-place in said stable, and yet he has more than once seen a fire built up and burning upon the dirt floor of the same during the late cold weather. Your petitioner charges that, in consequence of the facts herein before alleged, and the further fact that the

defendants keep great quantities of hay, fodder and other inflammable materials in said stable ; the result is, that the said stable tends to the depreciation of the value of your petitioner's property ; endangers its existence by fire ; drives customers from his store ; destroys his business, and does him incalculable and irreparable injury.    Your petitioner therefore charges that the livery stable is a nuisance to himself and the neighborhood, but productive of much greater injury to him than to any person.

The premises considered, therefore, your petitioner prays that your Honor will grant the necessary process, requiring said defendants to appear and answer this petition, and show cause, if any they can, why they should not be perpetually enjoined and restrained from keeping, using and occupying the said house as a livery stable, and from keeping horses therein, and from keeping hay, fodder and other inflammable materials therein ; from causing filth and depositing the same upon said lot, and also that they show cause why said nuisance should not be abated ; that your Honor grant to your petitioner a writ of injunction for the purposes aforesaid, and that at the hearing of the cause the same may be perpetuated, and that your petitioner may have judgment and the proper writ to abate said nuisance, and recover of said defendants damages to the amount of two thousand dollars, which petitioner alleges he has already sustained in consequence of said nuisance, and all further damages which he may sustain previous to the hearing of said cause.    Your petitioner prays judgment for his cost herein expended, and for such other and further relief in the premises as to justice and equity may appertain, &c.

The answer and amended answers of the defendants were mislaid, but there was an agreement in the transcript, by counsel, that it should be considered that the answers were complete denials, and set every matter of justification which could be set up of the erection and keeping of the stable in that place.    They also claimed heavy damages in reconvention.

May 28th, 1853, a preliminary injunction was ordered. Fall Term, 1853, the preliminary injunction was reformed, so as to allow the defendants to open the stable in the rear or side, and use it by such entrance for a livery stable, but enjoining them not to keep fire or manure on the premises, nor to do any of the other acts complained of by plaintiff, not inseparable from a livery stable, naming the acts specially. After this the plaintiffs amended their petition, alleging that there was still greater interruption of the side-walk than before, in this, that the defendants now brought their horses upon the side-walk immediately in front of the stable, carried them down the side-walk about forty feet, and turned them upon the next lot and from thence into the stable at the side entrance ; the front door being kept open with a bar across it. There were several other amendments, bringing the charges of a continued nuisance down to the trial, and containing the allegations of offers of compromise referred to in the Opinion.

The venue having been changed to Hays county, the testimony was nearly all taken by depositions, and was very voluminous. It is not considered an essential part of this report. The same may be said of the instructions given and refused ; they covered thirteen pages of foolscap.

The jury found a general verdict for the plaintiff, upon which the Court entered the following decree :

It is therefore considered, ordered, adjudged and decreed, that the said defendants, their agents, servants and those holding under them, and all others, be perpetually enjoined from carrying over, or along the side-walk fronting upon said livery stable, on lot No. 3, in block No. 84, on the east side of Congress avenue, in the City of Austin, any horses, mules, jacks, carriages, wagons or other animals or vehicles, and from, in any manner, entering said stable through the front entrance with any such animals or vehicles ; and from, in any manner, obstructing said side-walk with any such animals or vehicles. It is further ordered, adjudged and decreed, that the defend-

Burditt v. Swenson.

ants, those claiming under them, and all others, be perpetually enjoined from keeping said stable in an uncleanly and filthy manner, and that they be forbidden and enjoined from allowing any accumulation of filth or manure to remain longer than twenty-four hours after one day accumulation ; and that they be further enjoined from suffering to remain, or allowing any opening or aperture in the north wall of the defendant's stable, but that the same be entirely closed and made tight ; and also that they be perpetually enjoined from keeping up, making or using any fires in said stable, except such as may be kept in stoves or fire-places. It is further ordered, adjudged and decreed that the plaintiff recover of the defendants his costs herein expended, and that a copy of this decree be duly certified to the Clerk of the District Court of Travis county.

Before the entering of said decree, the plaintiff prepared and submitted a decree perpetually enjoining the defendants from keeping their livery stable at that place ; which decree the Court refused to enter, and plaintiff excepted.

Defendants' motion for a new trial overruled. Notice of appeal by both parties. Assignment of errors by appellant's as follows :

1st. The Court erred in the general charge to the jury.

2nd. In giving the instructions asked by Swenson's counsel.

3rd. In refusing the charge asked by the counsel for Burditt & Case.

4th. In refusing the motion for a new trial.

The appellee, by consent, assigned for error that the Court erred in refusing to enter a decree perpetually enjoining the defendants from keeping a livery stable at the place.

*Hamilton, Oldham* and *Sneed*, for appellants. [We have found no brief for the appellants, and regret it the more, because it was out of the question to print all the evidence, with the instructions given and refused, and because the assignment

of errors is so general as not to suggest the very point of error relied upon.—REPS.]

*T. H. DuVal* and *Paschals & Stribling*, tor appellee. Blackstone defines a " nuisance to be anything that worketh hurt, inconvenience or damage." Blackstone cites Finch, L. 188 ; Rep. 58 ; Cro. Eliz. 118 ; Cro. Car. 310 ; Roll. Ab. 39 ; 2 Roll. 140, &c. Christian cites Rex v. White and Ward, 1 Burrow, 333, which was an indictment for a nuisance, and in which Lord Mansfield says, " the word ' noxious ' not only " means hurtful and offensive to the smell, but it is also the " translation of the very technical term ' *nocivus*,' and has al- " ways been used for it, ever since the Act for the proceed- " ings being in English." But is not necessary that the smell should be unwholesome ; it is enough that it renders the enjoyment of life and property uncomfortable. (See 1 Burrow, p. 337.)

We thus have the definition of a nuisance, which is public, if it affects the citizens generally ; and private, where it affects one man individually ; and it may be both public and private.

Our next object will be to show, from a few of the leading cases, without regard to chronology, that this definition has been enlarged as refinements and sanitary movements have advanced, until livery stables are placed in the same classification with slaughter-houses, pig sties and smelting shops ; and that in fact every thing which renders the air impure and disagreeable—which from its locality is inconvenient and offensive, is a nuisance which the law will abate. (Coker v. Birge, 9 Ga. R. 425 ; 10 Ga. 336 ; Catlin v. Valentine, 9 Paige, 576. The Court in 10 Ga. 336 reviewed Catlin v. Valentine, 9 Paige; The Burnt Island Whale Fishing Co. v. Trotter, 5 Wilson & Sh. Parl. Rep., 649 ; Swinton v. Pedid, 15 Shaw & Denl. Sess. Ca. 775, and the same case in Maclean & Rob. Parl. R., 1018, and arrived at the conclusion that a livery stable in a city, erected within sixty-five feet of a hotel, is *prima fa-*

*cie* a nuisance, and may be restrained by injunction. And see Bonner v. Wellborn, 7 Ga. R. 296.

This principle was carried still further in the cases of Whiting v. Bartholomew, 21 Day's Conn. R. 569, which was a case 2/3 about a blacksmith shop, which, from its locality and noise, was declared to be a nuisance.

The case of Howard v. Lee, 3 Sandford's N. Y. Rep., 281, was against a soap chandlery which had stood seventy-five years. The preponderance of medical evidence was in favor of the healthfulness of the business; but the Supreme Court of New York even enlarged the principle laid down by Lord Mansfield, and held that it was enough that unpleasant smells (unpleasant to some people,) were generated, and that they were offensive in the summer season.

And so in Brady v. Weeks, 3 Barker's N. Y. Reports, 157, a slaughter pen, which was built upon the Commons, but to which the settlements afterwards extended, was declared a nuisance, because such callings must give way before the march of civilization, and there could be no prescription in favor of a nuisance, every continuation being a new nuisance. (Westham v. Mordant, Cro. Eliz., 191; Penraddock's Case, 5 Coke, 101; Staple v. Spring, 10 Mass. 74.)

Mr. Eden enumerates, among other nuisances, "a brew "house, glass house, lime kiln, dye house, smelting house, tan "pit, chandler's shop, or swine stye, if set up in such incon- "venient parts of the town as that they incommode the neigh- "borhood; so, also, steeping stinking skins in water and lay- "ing them in the highway; and, in general, every thing that "causes not only an unwholesome smell, but that renders the "enjoyment of life uncomfortable." Eden on Injunctions, 264. (The King v. Pappineau, 1 Strange, 636.)

It may be as well in this place to notice the essence of the nuisance in all these cases, the failure to understand which seems to have led the opposite side into great confusion. Lord Hardwicke, in Rex v. Pappineau, says: "The cases cited by

"Mr. Strange were of a permanent nuisance ; but here, the "erecting the mole is not the nuisance, (for it might be lawful "to do that,) but the nuisance arises from the use he puts it "to. If a dye house, or any stinking trade, you shall not pull "down the house where the trade was carried on." To which Powys and Fortescue agreed, and the latter remarked : "I re-"member the case of a glass-house, where the judgment was "to abate the nuisance, not that the house should be pulled "down, but only to prevent his using it again as such ; which "might have been done in this case. to prevent his dipping "skins again."

So that it cannot technically be said that a livery stable is a nuisance if erected in the heart of a city : but to keep a livery stable in such a place is *prima facie* to support a nuisance. That is, the business, not the house, constitutes the nuisance. And this, I think, sufficient answer to the case of Kirkman v. Handy, 11 Humph. 406, in which the Court refused to enjoin the building of a livery stable in the city of Nashville. And well it might, because not the house, but the inmates, consti-tuted the nuisance. The apprehensions of the use to which the house would be put were not sufficient grounds for an in-junction. It would have been different had it been a mill-dam or other permanent nuisance. It was simply the opinion of the Judge that a livery stable in a town or city was not of itself a nuisance ; but it would depend upon the place and manner of keeping it.

The want of accuracy in using the term *per se* may be seen in the case of Cheatham v. Shearon, 1 Swan's Tenn. R., 213, where it is said that a powder magazine erected in a city is, *per se*, a nuisance. The magazine was not a nuisance, but the powder was. The North Carolina case, it is to be observed, was not that of a livery stable, which no considerations of convenience make it require a central locality ; but that of a stable connected with and necessarily attached to a hotel, and which, from the manner of keeping it, became a nuisance.

(Dargan v. Waddell, 9 Iredell, 244.) These cases, duly considered, really range themselves upon our side. In the North Carolina case the hotel stable kept was found to be a nuisance, and the manner of keeping it was directed.

One general principle runs through all these cases, and that is, that whatever tends to the hurt or injury of another's property; and whatever is offensive to the smell or senses of a portion of the community is, *per se*, a nuisance, if kept so publicly or in such contiguity as to be offensive. And it matters not that the nuisance is public, if it operates to the injury of plaintiff. (Salta v. DeHeld, 9 Eng. Law and Equity Reports, 104.) Nor will the benefit to the public be any justification. (Pennsylvania v. Wheeling and Belmont Bridge, 13 How. U. S. R., 518–566 : The King v. Sir John Morris, 1 Barn and Adolph. 447 ; 20 E. C. L. Rep., 422 ; The King v. George Henry Ward, 4 Adolph. and Ellis, 384 ; 31 E. C. L., 82 ; Gold v. Carter. 9 Humph. 369.)

The case of Smith v. McAnathy, 11 Missouri Reports, 245, is so clear and so philosophically in accordance with the best rules of pleading and practice that we think it enough to cite it and read so much as bears upon the point at the trial. It will be seen that the Court ruled that what constituted a nuisance is a question of law for the Court, and not of fact for the jury. And the analogy given was that of an action of slander, in which the slanderous words used must be proven to the satisfaction of the jury ; but when so proven, there was nothing left to the jury but the measure of damages. And so in a suit for a nuisance, where it was alleged that the defendant kept a distillery upon a stream which flowed through the plaintiff's land ; and that connected with the distillery were sties, in which large quantities of hogs were kept, the offal from which rendered the waters of the creek unwholesome, and the vapors from which rendered a dwelling uninhabitable, the Court held that it was for the Court to determine, that these facts constituted a nuisance, and nothing was left for the jury but

to find whether the facts were proven. But, although in our case, we charged much stronger facts, the Court left it to the jury to say : 1. Were the facts proven ? 2. Were such facts legally a nuisance ? The error resulted to our injury ; but not to the injury of the defendants.

Leaving the discussion of the facts of the record to the argument at bar, we might here rest the case, were we content with the decree which the Court rendered upon the verdict of the jury. But we are not, and the appellees assign for error the refusal of the Court below to decree all the relief sought ; and he asks the Court here to render the decree which the Court below ought to have rendered.

The general verdict for the plaintiff determined every issue in his favor ; and consequently every material averment in the petition was maintained by the verdict. * * And it was the duty of the Court, under the prayer for general relief, to embody these general results in the judgment. They constituted the judgment of the law upon the ascertained facts of the case. (Hardy v. DeLeon, 5 Tex., 246 ; Smith v. Johnson, 8 Id. 418 ; Burton v. Anderson, 1 Id. 97 ; Mays v. Lewis, 4 Id. 45 ; Miller v. Shackelford, 4 Dana, R., 27 ; Huntington v. Ripley, 321 ; Avery v. Avery, 12 Tex. R., 58 ; 2 Tidd's Practice, 868 ; 1 Arch. Prac., Sec. 7, p. 213.)

The only issues really before the jury were as to the manner of keeping the stable—the effect as to its flies, smells, comfort, inconvenience and injury to the plaintiff's business, and the obstruction of the side-walk ; and also the questions of damage to the defendants, and the plea of justification by the plaintiff. All these issues were found by the general verdict in favor of the plaintiff, though the amount of damages to the plaintiff was not found. And, as remarked in the Missouri case, a special action on the case is usually instituted, not to recover damages, but to settle the facts with a view to obtaining an injunction to restrain the nuisance.

And even had it been strictly an equity proceeding, yet as

the Court had submitted all the issues to the jury, to enlighten his conscience, it was his duty to frame his decree in accordance with their verdict. (Daniel's Chan., chap. 25, p. 1285, and notes.)

And to the same effect is our statute, which declares that " Judgments rendered in the District Court shall, in all civil " cases, be so rendered as to conform to the pleadings, the na- " ture of the case as proved, and the verdict thereon." (Hart. Dig.., Art. 115, 769.)

And even admitting that the Court had a discretion as to the kind of decree to render, the proofs from which the verdict was obtained showed that kind of irreparable and incalculable mischief—such constantly recurring grievance as could not be computed at law, and therefore demanded a perpetual injunction. (Attorney General v. Cleaver, 18 Vesey, 211; Spencer v. The L. B. Co., 18 Sim. 193 ; Sampson v. Smith, Id. 272.) And this, whether it was a public or private nuisance, if Swenson could show that he was individually injured. (Attorney General v. Forbes, 2 M. & C. 123.)

And with regard to private nuisances, the Court will interfere by way of injunction where the mischief is irreparable. The general ground of its interference is that sort of material injury to property or health requiring the application to prevent, as well as remedy, an evil for which damages, more or less, would be given in an action at law. (Att'y Gen. v. Nichol, 16 Ves. 343 ; Fishmonger's Company v. E. J. Company, 1 Dick. 163.)

WHEELER, J.   It is not questioned that the allegations of the petition were sufficient to entitle the plaintiff to an injunction. And the revelations of fact, which the record contains, show that the plaintiff's case was well supported by the proof. We cannot hesitate in coming to the conclusion, from the evidence, that the stable of the defendants was a nuisance.

What constitutes a nuisance is well defined. The word means, literally, annoyance ; in law, it signifies, according to Blackstone, "anything that worketh hurt, inconvenience, or damage." (3 Com. 216.) A private nuisance is defined to be anything done to the hurt or annoyance of the lands, tenements or hereditaments of another. (Id. 215.) As, if I have a way annexed to my estate, across another man's land, and he obstruct me in the use of it by ploughing it up, or laying logs across it, and the like ; or if a man should erect his building without right, so as to obstruct my ancient lights ; or keep hogs or other animals, so as to incommode his neighbor and render the air unwholesome. (Ib.; 9 Co. 58.) "And by con-"sequence it follows, that if one does any other act, in itself "lawful, which, being done in that place, necessarily tends "to the damage of another's property, it is a nuisance ; for it "is incumbent on him to find some other place to do that act, "where it will be less offensive." "So closely (says Black-"stone) does the law of England enforce that excellent rule of "Gospel morality, of doing to others as we would they should "do unto ourselves." (3 Com. 218.) To constitute a nuisance, it is not necessary that the annoyance should be of a character to endanger health ; it is sufficient if it occasions that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable. (9 Paige, 576 ; 9 Georgia, 425, 428 ; 9 Iredell, 244.) Even that which does but cause a well-founded apprehension of danger, may be a nuisance. Thus, in Cheatham v. Shearn it was held that a powder house located in a city and containing, stored therein, large quantities of gunpowder, was a nuisance. "When we know "(said Judge Green) that the electric fluid, the irresistible ef-"fects of which are disclosed in every thunder storm, may, in "defiance of every precaution, cause it to explode, it cannot be "doubted that if five hundred kegs of powder were stored in a "magazine in this city, every thunder storm would awaken an "univesal alarm and consternation in the minds of the in-

"habitants." (1 Swan, 213, 216.) And the Court pronounced it, *per se*, a nuisance. So it has been held that building a smith's forge so near another's house, and making such a noise with hammers, that the occupants could not sleep, (Com. Dig. Action on the case for Nuisance;) and so constructing a livery stable as to disturb the occupants of an adjacent house by the interminable stamping of horses, day and night, and by noisome smells, is a nuisance. (9 Iredell, 244.)

These references show that the plaintiff took upon himself an unnecessary burden of proof, by alleging that the stable was annoying and injurious to him in more ways, and to a greater extent, than was necessary to constitute it a nuisance. Yet there was a general verdict for the plaintiff, maintaining the truth of his averments; and it appears to be well supported by evidence. The charge of the Court was not unfavorable to the defendants; and we do not perceive any ground for an appeal on their part, in any of the errors they have assigned. The only question is whether the Court did not err in refusing a peremptory injunction in favor of the plaintiff; which refusal he has assigned as error.

After the institution of this proceeding, the stable appears to have been kept in a less annoying manner than formerly, and the witnesses say, as well as stables are usually kept. Yet the amended petition charges it to have been still a nuisance, and under the pleadings and proof, the verdict establishes that it was such, as well after as before the partial dissolution of the injunction; or the partial injunction decreed. The finding of the jury is inconsistent with any other conclusion than that they believed the stable to be a nuisance, as then kept. For it was returned under the charge of the Court, to the effect that a livery stable is not, in itself, a nuisance; but whether it be so or not will depend upon the manner of keeping it, and other circumstances. It would appear then, that the only decree which could be legally rendered on the verdict, was a perpetual injunction.

It is true, as observed by Ch. Justice Ruffin in Dargan v. Waddell, (9 Iredell, 247,) that a livery stable in a town is not necessarily, or *prima facie*, a nuisance. Such erections may and usually are harmless and useful. But if they be so built, or so kept, or so used as to destroy the comfort of persons owning and occupying adjoining premises, and impair their value, stables do thereby become nuisances. They are not necessarily so, but may become so ; and we think the proof abundantly shows that that of the defendants was in fact so, by reason of its locality and construction, as well as the manner of keeping it. According to the testimony of the defendants' witnesses, it was as well kept as livery stables generally are. The defendants did not propose to keep it differently ; or profess to be able and willing to undertake the keeping of it in any manner which would be less annoying to the plaintiff. Supposing it possible that a stable, situated and constructed as this is, may be so kept as not to be a nuisance, will this be done ? What security has the plaintiff that the care and expense necessary for that purpose will be bestowed ? The defendants do not propose it. On the contrary, they insist that it is well kept, and that it is not a nuisance. That is the issue they tender ; and on it they rest their case ; it has been rightly found against them ; and the corresponding judgment must follow.

In Coker v. Birge, (10 Ga. R. 336,) which was a bill to enjoin the building of a stable, the defendant, in his answer, insisted that he would take such precautionary measures as to prevent the apprehended danger, by keeping the stable clean, sprinkling lime water, &c. But the Court refused to discharge the *ad interim* interdict, so far as to permit the experiment to be made ; because they deemed it improbable that what the defendant proposed would be done. (See same case, also in 9 Ga. 425.)

So in Catlin v. Valentine, (9 Paige, 575,) where the defendant, by his answer, insisted that he intended to use a slaughter

house in such a manner that it would not be a nuisance to complainants, the Chancellor admitted that it was, perhaps, possible to carry on the business to a limited extent, in such a manner as that it would not be a nuisance ; but he thought it wholly improbable that any one would incur such cost and labor, and therefore refused to dissolve the injunction (and see cases cited in Coker v. Birge, 9 and 10 Ga. R.)

Here the defendants' stable, as kept, is a nuisance, and they do not propose to keep it in any other manner which will be less offensive or injurious. Nor does the evidence warrant the belief that, as it is located and constructed. it will or can be so kept as not to be a nuisance.

The principle upon which an injunction is allowed in such cases is. that the injury is such, as, from its nature, is not susceptible of being compensated in damages. It is a constantly occurring grievance, from day to day, and year to year, which, in its nature, is incapable of being estimated in dollars and cents ; and cannot be prevented otherwise than by an injunction. (Story Eq., Sec. 925 ; 16 Ves. 341.)

Though the defendants should sustain inconvenience and loss, they have no just cause of complaint. They were aware of the plaintiff's objections to their building their stable in that place. Still they persisted ; and even went on to enlarge it after the institution of this proceeding. They refused every offer of the plaintiff, either to be at the expense of removing the stable, or of building one for them of like dimensions elsewhere. They commenced and consummated the establishment of the nuisance in their own wrong. The maxim of the law is, use your own rights and property so as not to injure that of another. The legal proposition, consequently, being, that if one do an act in itself lawful, which being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent on him to find some other place to do that act, where it will not be injurious to his neighbor, (3 Bl. 218,) it was the duty of the defendants to find some

other place for their livery stable, where it would not be so injurious or offensive as to deprive others of their accustomed and rightful use and enjoyment of their property.

We are of opinion that the judgment be reformed, so as to render the decree which the Court below ought to have rendered; that is, that the injunction be made absolute and perpetual.

Judgment reformed.