## Case No. 4,876.

### FLINT v. RUSSELL et al.

[5 Dill. 151; 1 8 Cent. Law J. 68; 7 Reporter, 265; 7 Am. Law Rec. 575; 19 Alb. Law J. 226.]

Circuit Court, E. D. Missouri. Jan., 1879.

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

J. M. & C. H. Krum, for complainant.

Broadhead, Slayback & Haeussler, for defendants.

DILLON, Circuit Judge. The prayer of the bill is "that the defendants be perpetually enjoined by the decree of the court from further proceeding with the erection of said livery stable upon the said lot, and from the use and occupation of said premises for the purposes of a public livery stable, and for general relief." The present application is for a special preliminary injunction restraining the defendants from making such erection, and from so using the said premises.

The questions which may finally be involved in the merits of the case are of very great importance, as they arise out of the point where two plain principles of law meet. The one is that every owner of private property may make any lawful use of it which he sees proper. The other is that private property must be so used as not to injure the property of his neighbor, or invade the just rights of the public. St. Helen's Smelting Co. v. Tipping, 11 H. L. Cas. 642.

The essential groundwork of the bill in this case is, that the proposed erection of a livery stable on the lot in question, and its use for this purpose when erected, will constitute a nuisance to the plaintiff's adjoining property. The bill can have no other foundation. On a street, and in a locality such as this portion of Locust street is, many erections can readily be imagined that would be extremely objectionable to the owners of residences, such as a meat market, a greengrocer's establishment, or, indeed, a store building or a business house of any kind. But the general law of the land does not limit the rights of ownership by the tastes and wishes of one's neighbors. Possibly, under the charter provisions, the municipal authorities might be invested with more power, in the nature of police regulations,

over the uses to which private property may be put, than can be exercised by the courts under the general law; but it is conceded that the city authorities have not undertaken to regulate the erection or use of livery stables. It is, therefore, clear that this application must rest upon the proposition that the livery stable proposed to be erected and used by the defendants is, and will be, in the legal sense of the term, a "nuisance." To be a nuisance it must be something which unreasonably and sensibly interferes with the comfort and enjoyment of life or property—which may be by noises, noxious and offensive smells, injurious gases, the collection of flies and insects, and the like. The books abound in cases where nuisances of this kind are held actionable at law, and where, when the fact is ascertained, either by a verdict or by admission in the pleadings, or from the essential and unavoidable character of the trade or occupation, that the thing or matter complained of is a nuisance, courts of equity have interfered by injunction.

Counsel have referred to a number of adjudications in which the legal rights of the proprietors of livery stables and those of the adjoining or near proprietors have been considered by the courts. The principal cases are the following: Aldrich v. Howard, 7 R. I. 87, 8 R. I. 246; Burditt v. Swenson, 17 Tex. 489; Dargan v. Waddill, 9 Ired. 244; Kirkman v. Handy, 11 Humph. 406; Coker v. Birge, 10 Ga. 336; Harrison v. Brooks, 20 Ga. 537; Morris v. Brower, 1 Anth. N. P. 368. The judgments in these cases concur in establishing this doctrine, viz., that a livery stable in a town or city is not per se—that is, necessarily and unavoidably—a nuisance, but it may be or become a nuisance, and this depends upon its location, as respects the property near by, and the manner in which it is built, kept, and used. The foregoing observations are well illustrated by Aldrich v. Howard, 8 R. I. 246, where it was decided that a livery stable may be a nuisance, notwithstanding it was properly built, properly kept, and was in a location as fit as any in that part of the city. The court say: "It has been held, in other cases, that a stable in a town is not necessarily and per se a nuisance; yet if it is so built or so used as that it destroys the comfort of persons owning and occupying adjoining premises, creating such an annoyance as to render life uncomfortable, then it is none the less a nuisance that it is well kept, carefully built, and as favorably located as the town will admit."

This principle, that a livery stable is or is not a nuisance according to circumstances, is decisive of the present application for a preliminary injunction. The stable is not yet erected—its erection has just been commenced. The complainant seeks relief by injunction against an apprehended mischief and nuisance. The principles upon which the courts of equity proceed in such cases are well settled, and are thus clearly stated by Lord Chancellor Brougham in the case of Earl of Ripon v. Hobart, 3 Mylne & K. 169, 179: "If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irreparable mischief, without waiting for the result of a trial; and will, according to the circumstances, direct an issue, or allow an action, and, if need be, expedite the proceedings, the injunction being in the meantime continued. But where the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, the court will refuse to interfere until the matter has been tried at law, generally by an action, though in particular cases an issue may be directed for the satisfaction of the court where an action could not be framed so as to meet the question." I consider the principles thus laid down as to the time or stage at which equity will interfere as founded on the soundest of reasons; and they have been approved by the supreme court of Tennessee in Kirkman v. Handy, supra, which refused to prevent the erection of a livery stable upon a lot adjoining the plaintiff's, "on Cherry street, in one of the best neighborhoods in the city of Nashville." In Coker v. Birge, 9 Ga. 425, an injunction against the erection was granted, but it was for the reason that, no answer having been filed, the allegations of the bill that the stable would be a nuisance were admitted; but when this was denied, the same court, in the subsequent case of Harrison v. Brooks, refused such an injunction. In Burditt v. Swenson, supra, the livery stable having been found to be a nuisance by the verdict of a jury, the court awarded a perpetual injunction.

No case has been referred to in which the erection of a livery stable has been enjoined where the fact that it would be a nuisance was denied, and where it had not been ascertained to be such by an appropriate judicial inquiry, before the injunction was awarded. And, so far as my researches have gone, Lord Brougham is entirely correct in his statement in the Earl of Ripon's Case, supra, "that no instance can be produced of the interposition by injunction in the case of an eventual or contingent nuisance." Cleveland v. Citizens' Gaslight Co., 20 N. J. Eq. 201; Duncan v. Hayes, 22 N. J. Eq. 25; Rhodes v. Dunbar, 57 Pa. St. 274; Wood, Nuis. § 789. The difficulty in thus interfering is greatly increased, if not insurmountable, when it is the use to which the structure is to be put, and not the intrinsic nature of the structure itself, which forms the basis of anticipated grievance. Duncan v. Hayes, 22 N. J. Eq. 25.

That the parties may not be misled, it may be well to add that we deny the injunction on the ground that the answer having denied the fact that the building, when erect-

ed and used as proposed, will be a nuisance to the property. in the neighborhood, and the case being one in which the question of nuisance or no nuisance depends upon circumstances hereafter to be ascertained, it is, therefore, not one in which it is proper to issue the writ asked at this stage of the controversy. The filing of the bill may not, however, prove to be eventually useless, since "it is generally good policy," says Mr. Wood (Law of Nuisance, § 790), where there are strong reasons to believe that the thing will be a nuisance, to institute proceedings to stay its progress, particularly if its erection involves large expenditures, as in such cases the party cannot be charged with laches, nor can acquiescence in any measure be imputed to him, and the diligence used by instituting the proceedings, operating as a notice and protest against the use of the property in the manner contemplated, strengthens the plaintiff's equities when he asks for an injunction after the use of the property actually proves injurious." The defendants now proceed at their peril, and if it shall be hereafter found by a jury, or otherwise judicially ascertained, that the stable in this place, as used by them, does interfere with the comfortable enjoyment of the neighboring property, they cannot complain if they are then perpetually enjoined from the further use of it for the purpose for which it was designed. Injunction denied.