**Affirmed in Part, Reversed in Part, Remanded, and Opinion filed November 17, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00818-CV

---

### ENTERPRISE CRUDE GP LLC AND
### ENTERPRISE CRUDE PIPELINE, LLC, Appellants

### V.

### SEALY PARTNERS, LLC AND SEALY PARTNERS NO. 3, LP, Appellees

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Cause No. 2019V-0027**

---

## O P I N I O N

This interlocutory appeal under the Texas Citizens Participation Act ("TCPA") arises from a dispute between two owners of adjacent real property. The construction of crude storage tanks by the owner of one tract has allegedly diminished if not destroyed the opportunity of the neighboring owner, plaintiffs-appellees, to commercially develop the adjacent tract due to a potential "blast zone" associated with the newly built tanks. The plaintiffs sued, alleging

intentional and negligent nuisance, fraudulent misrepresentation, tortious interference with prospective contracts, promissory estoppel, trespass, and civil conspiracy. The defendants jointly moved to dismiss all claims under the TCPA, which the trial court denied.[1]

For reasons detailed below, we hold:

1) The trial court did not err in denying the motion to dismiss the claim against appellant Enterprise Crude Pipeline, LLC ("Enterprise") for negligent nuisance because the TCPA applies to that claim, and appellees established a prima facie case for each element of that claim. However, the trial court erred in denying the motion to dismiss the claims against Enterprise for intentional nuisance, fraudulent misrepresentation, tortious interference, and conspiracy, because the TCPA applies to those claims, but appellees failed to establish a prima facie case for each element of those claims.

2) The trial court did not err in denying the motion to dismiss the claim against appellant Enterprise Crude GP LLC ("ECGP") for trespass, because the TCPA does not apply to that claim. However, the trial court erred in denying the motion to dismiss the claims against ECGP for intentional and negligent nuisance, tortious interference, fraudulent misrepresentation, promissory estoppel, and conspiracy, because the TCPA applies to those claims, but appellees failed to establish a prima facie case for each element of those claims.

We affirm in part, reverse in part, and remand for further proceedings.

---

[1] *See* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011 (West 2015). The TCPA was amended in 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. The 2019 amendments do not apply to this case, which was filed on March 8, 2019. *See id.* §§ 11-12, 2019 Tex. Gen. Laws at 687 (providing that amendments apply to actions filed on or after September 1, 2019). We refer to the TCPA version applicable to this dispute.

2

## Background

Appellees Sealy Partners, LLC and Sealy Partners No. 3, LP (collectively, "Sealy Partners") own real property in Sealy, Texas, and planned to develop it for commercial use. When Sealy Partners acquired the property, at least four large, above-ground crude storage tanks stood on an adjacent tract, which is now owned by Enterprise. According to Sealy Partners, the existing tanks would not have interfered with its plans to commercially develop its property.

Sealy Partners alleges that, in 2015 Enterprise approached it about relocating a drainage easement and retention pond. Sealy Partners owned the easement and pond, which bisected Enterprise's property. Enterprise wanted to relocate the retention pond to an area immediately adjacent to Sealy Partners' property, thereby eliminating the need for the easement.

In January 2016, a meeting allegedly occurred between representatives of Sealy Partners, the City of Sealy, Enterprise, and ECGP, to discuss the easement relocation. At the meeting, according to Sealy Partners, "a process was outlined to complete that project" once Sealy Partners agreed to the drainage easement agreement. Also, Enterprise and ECGP representatives indicated an intent to construct additional storage tanks on Enterprise's tract. Sealy Partners "expressed concern to the Enterprise representatives regarding the prospect of Enterprise expanding its operation, if [Sealy Partners] granted them the authority to relocate the retention pond, such that new tanks would be built on the property line and create an impact zone that would affect the use of [Sealy Partners'] land." In response, Enterprise and ECGP allegedly represented that they "would research the required setback between the proposed oil tanks and [Sealy Partners'] property, communicate this information with the City and [Sealy Partners], and provide all parties with any plans to construct additional tanks so as not to interfere with

3

[Sealy Partners'] development." Allegedly on "the strength of those representations," Sealy Partners "did [its] part and executed the Drainage Easement Agreement."

Sealy Partners' plans for its property included construction of an apartment complex, a hotel, a restaurant, and a convenience store, for which it claims to have secured "HUD-assisted" funding.[2] HUD regulations provide that "[t]he Department will not approve an application for assistance for a proposed project located at less than the acceptable separation distance from a hazard, as defined in § 51.201, unless appropriate mitigating measures, as defined in § 51.205, are implemented, or unless mitigating measures are already in place." 24 C.F.R. § 51.202(a). "Acceptable separation distance" means the distance beyond which the explosion or combustion of a hazard is not likely to cause structures or individuals to be subjected to blast overpressure or thermal radiation flux levels in excess of promulgated safety standards. *Id.* § 51.201. "Hazard" includes any stationary container which stores hazardous substances of an explosive or fire-prone nature, like Enterprise's crude storage tanks. *Id.*

In March 2016, Enterprise applied to the City of Sealy for land disturbance and building permits to allow construction of an expansion to the existing crude oil storage terminal. Enterprise requested permits to construct: "5 new API storage tanks; pumps; [an] electrical building; [and] associated mechanical, civil, structural, electrical infrastructure." In December 2016, the City of Sealy approved the applications and issued permits to Enterprise to conduct land preparation work and begin building the additional tanks "per submitted plans."

---

[2] According to Sealy Partners, "'HUD assisted' loans are insured by the Department of Housing and Urban Development (HUD), but the money is not provided by the Federal Government."

4

Construction of the five new tanks began the following year. According to Sealy Partners, its project financier demanded that an environmental study be commissioned regarding the "blast zone" around the additional storage tanks, because the financier would not fund Sealy Partners' project if the storage tanks were too close to the proposed development. The blast zone study concluded that "no portion of [Sealy Partners'] parcel is capable of being built upon without being affected by the impact zones of the Enterprise tanks." The financier ultimately left the project, and Sealy Partners contends that the proximity of the new tanks to Sealy Partners' land prevented it from obtaining any alternative financing.

Sealy Partners sued Enterprise, ECGP, and Enterprise Products, LLC.[3] Sealy Partners asserted identical claims against each defendant: intentional and negligent nuisance, fraudulent misrepresentation, tortious interference with a prospective business relationship, promissory estoppel, and trespass. Sealy Partners also alleged that the defendants conspired to undermine Sealy Partners' planned development. In support of its claims and theories, Sealy Partners pleaded the following:

- *Nuisance.* Enterprise and ECGP intentionally and negligently created a permanent nuisance by constructing storage tanks that had a blast zone encompassing part of Sealy Partners' property, thereby causing damage through the inability to develop, lease, or sell all or a portion of the property.

- *Fraudulent misrepresentation.* Enterprise and ECGP representatives misrepresented that they would research the separation distance required for Sealy Partners' intended development and provide Sealy Partners with any

_____

[3] Appellants assert that they have no knowledge of "Enterprise Products, LLC" or its legal status. We do not address the status of that entity, or its involvement here, because the only appellants before us are Enterprise and ECGP. Based on our record, Enterprise Products, LLC, did not respond in the trial court and did not file a notice of appeal.

plans for the construction of new oil tanks to respect Sealy Partners' intended use of its land. These misrepresentations allegedly caused Sealy Partners to suffer injury, including the loss of future development, rent collection, and potential sale. The misrepresentations also allegedly caused a decrease in market value.

- *Tortious interference with a prospective business relationship.* Sealy Partners alleged that a business relationship among Sealy Partners, its financiers, and the City of Sealy to secure a loan for the project was reasonably certain to occur; that profits from a future sale or lease were reasonably certain to occur; and that Enterprise and ECGP knew of the impending development and began construction of the tanks to prevent the development from occurring and to reap financial benefit for themselves.

- *Promissory estoppel.* Enterprise and ECGP promised to research the required separation distance between Sealy Partners' planned development and the additional tanks and to provide this information to Sealy Partners, the city, and the respective engineers before beginning construction. Sealy Partners relied on these promises to its detriment by moving forward with its development plans, at significant financial expense.

- *Trespass.* Enterprise and ECGP trespassed on Sealy Partners' land by removing Sealy Partners' existing wooden fence and installing a new chain-link fence with razor wire, without prior notice or consent.

- *Civil conspiracy.* Enterprise and ECGP agreed to prevent by unlawful means Sealy Partners' development of its land.

Regarding damages, Sealy Partners alleged that construction of the five additional tanks created a surrounding "blast zone" that caused Sealy Partners'

financier to withdraw and precluded substitute funding, thus materially devaluing the property. Sealy Partners sought actual damages for lost market value, lost profit, loss of the use and enjoyment of the land, and destruction of the existing fence, as well as punitive damages.

Enterprise and ECGP filed a joint motion to dismiss all of Sealy Partners' claims under the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). They argued that: (1) the TCPA applies to each of Sealy Partners' claims because the claims are based on, related to, or in response to, appellants' exercise of the right of free speech, the right to petition, or the right of association; (2) Sealy Partners could not meet its prima facie burden to present clear and specific evidence supporting each essential element of its claims; and (3) appellants had valid legal defenses to Sealy Partners' claims. In response, Sealy Partners disputed that the TCPA applies to any of its claims. Sealy Partners also submitted several affidavits in support of its prima facie evidentiary burden.

After a hearing, the trial court denied appellants' motions to dismiss. Enterprise and ECGP perfected this interlocutory appeal.[4]

**Analysis**

**A.    Applicable Law and Standard of Review**

The TCPA contemplates an expedited dismissal procedure applicable to claims brought to intimidate or silence a defendant's exercise of the rights enumerated in the Act. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2016) (per curiam). The party invoking the TCPA may file a motion to dismiss the "legal action" and must show by a preponderance of the

---

[4] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (a person may appeal from an interlocutory order that denies a motion to dismiss under section 27.003).

evidence that the action is "based on, relates to, or is in response to" that party's exercise of the right of free speech, right to petition, or right of association. Tex. Civ. Prac. & Rem. Code §§ 27.003(a); 27.005(b); *see also Coleman*, 512 S.W.3d at 898. If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the nonmovant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c); *see also Coleman*, 512 S.W.3d at 899. The movant can still obtain dismissal, however, if it establishes "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d).

We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Coleman*, 512 S.W.3d at 899; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.); Tex. Civ. Prac. & Rem. Code § 27.011(b). A court's determination of whether claims fall within the TCPA's framework is subject to a de novo standard of review. *See Adams*, 547 S.W.3d at 894. Under that standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Joselevitz*, 524 S.W.3d at 859. We must consider the relevant pleadings and any supporting or opposing affidavits "stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review these materials in the light most favorable to the nonmovant. *See Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *2 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.).

**B.    Does the TCPA apply to Sealy Partners' claims?**

      1.    *Sealy Partners' claims against Enterprise*

Enterprise argues that Sealy Partners' claims against it for nuisance, fraudulent misrepresentation, tortious interference, promissory estoppel, and conspiracy are based on, related to, or in response to Enterprise's exercise of one or more of the TCPA's enumerated rights:  the right of free speech, the right of association, or the right to petition.[5]  As Enterprise contends, the fundamental basis for each of Sealy Partners' claims is that appellants were allegedly engaged in a calculated scheme to undermine Sealy Partners' intended use of its property and, in the process, materially and severely devalued Sealy Partners' property by preventing significant commercial development, for which financing was already confirmed.  Appellants allegedly executed this scheme by petitioning the City of Sealy for construction permits when appellants were aware of Sealy Partners' development plans, making false representations and promises in connection with their plans to construct additional tanks (purportedly a matter of public concern), and completing construction of additional above-ground storage tanks on the adjacent property.

      a.    Right to petition

We begin with Enterprise's contention that Sealy Partners' claims are based on, related to, or in response to its right to petition.  Under the TCPA's former version, applicable here, "exercise of the right to petition" is defined broadly to include among other things:  "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding," Tex. Civ. Prac. & Rem.

_____

[5] Enterprise does not challenge the trial court's refusal to dismiss the trespass claim.

Code § 27.001(4)(B); and "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding," *id*. § 27.001(4)(C). "Governmental proceeding" means "a proceeding, other than a judicial proceeding, by an officer, official, or body of this state or a political subdivision of this state, including a board or commission. . . ." *Id*. § 27.001(5). For all of the rights protected under the TCPA, a "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). The Supreme Court of Texas has held that the Act may protect both public and private communications. *See Coleman*, 512 S.W.3d at 899 (discussing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)).

Considering the relevant pleadings and the supporting or opposing affidavits "stating the facts on which the liability or defense is based," Tex. Civ. Prac. & Rem. Code § 27.006(a), we must determine whether Enterprise met its initial burden by a preponderance of the evidence. *Id*. § 27.005(b). We have summarized Sealy Partners' pleadings above. Enterprise also attached evidence to its TCPA motion, including copies of the permit applications and the issued permits. These documents show that Enterprise owns the tract adjacent to Sealy Partners' property, that Enterprise submitted applications for land disturbance and building permits to the City of Sealy, and that the city approved and issued the permits to Enterprise. We agree that Enterprise's applications for land disturbance and building permits from the City of Sealy to construct the additional tanks are "communications" in "connection with an issue under consideration or review by a . . . governmental body or in another governmental or official proceeding." *Id*. § 27.001(4)(B). Enterprise's permit applications and plans to expand its tank field

10

were issues "under consideration or review" by the City of Sealy, a "governmental body" and a political subdivision of this state. The applications also qualify as communications "reasonably likely to encourage consideration or review of an issue by a . . . governmental body or in another governmental or official proceeding." *Id*. § 27.001(4)(C). Therefore, the permit applications constitute an exercise of Enterprise's right to petition. *Id.* § 27.001(4)(B), (C).

Additionally, Sealy Partners alleged that Enterprise made false representations and promises to advance appellants' alleged scheme to undermine Sealy Partners' planned use of its property. According to Sealy Partners' amended petition, during the January 2016 meeting when the respective parties' plans were under discussion with the city, Enterprise falsely promised to research the required setback between the additional tanks and Sealy Partners' property and provide Sealy Partners with any plans for the construction of new oil tanks to respect Sealy Partners' intended use of its land. Sealy Partners contends that Enterprise promised to provide the results of its setback research before beginning construction. Like the permit applications, Enterprise's alleged false representations and promises constitute "communications" under the TCPA. Moreover, as alleged, they were made "in connection with an issue under consideration or review by a . . . governmental body or in another governmental or official proceeding," or were "reasonably likely to encourage consideration or review of an issue by a . . . governmental body or in another governmental or official proceeding." *Id*. § 27.001(4)(B), (C).[6]

---

[6] Enterprise did not submit evidence addressing the misrepresentation allegations, but if the pleading on its face shows that the claims are based on, related to, or are in response to the movant's right to petition, then the TCPA applies and the movant need not present further evidence. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more.").

We find the First Court of Appeals' discussion of the right to petition in *Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), instructive on this point. In that case, a group of homeowners sued a lawyer representing the homeowners' neighborhood association, asserting a claim for tortious interference with prospective business relations, specifically the sale of their respective beachfront properties to the City of Galveston under a buy-out proposal following Hurricane Ike. *Id.* at 849-50. The homeowners alleged that the lawyer made several misrepresentations that interfered with the city's likely purchase of their properties. *Id.* at 850. The lawyer moved to dismiss the homeowners' tortious interference claim under the TCPA, arguing that the TCPA applied because the claim was based on, related to, or in response to his exercise of the right to petition. *Id.* at 851-52. The court of appeals agreed that the TCPA applied, holding that: all of the alleged statements forming the basis of the homeowners' tortious interference claim "concerned or were related to the City's plan to purchase the [homeowners'] properties;" the statements therefore "were made 'in connection with an issue under consideration or review' by the City of Galveston and the Texas Department of Public Safety, both of which are governmental bodies;" and thus the homeowners' claim was based on, related to, or in response to the lawyer's exercise of the right to petition. *Id.* at 858 (quoting Tex. Civ. Prac. & Rem. Code § 27.001(4)(B) (defining "exercise of the right to petition")).

Similarly, here, the alleged misrepresentations Enterprise made during the January 2016 meeting concerned in part the plan to construct new tanks and whether the potential impact zone would affect Sealy Partners' property.[7] The alleged false statements therefore were made in connection with an issue under

---

[7] We note that Sealy Partners' evidence submitted with its response confirms that these matters were under consideration by the city at the January 2016 meeting.

consideration or review by the City of Sealy. *See id.* Thus, we conclude that Enterprise's alleged misstatements and promises, given their context, also qualify as an exercise of Enterprise's right to petition.

b. "Based on, relates to, or in response to"

Having concluded that the pleaded communications generally qualify as an exercise of the right to petition under the TCPA, we next decide whether Sealy Partners' claims against Enterprise are "based on, relate[d] to, or in response to" those communications. Tex. Civ. Prac. & Rem. Code § 27.003(a); 27.005(b).[8] Neither the phrase as a whole nor its individual terms are defined in the Act. This court and others have stated that the TCPA at least requires that the claims be "factually predicated" on the exercise of TCPA rights. *See, e.g.*, *TN CPA, P.C. v. Nguyen*, No. 14-19-00677-CV, 2020 WL 5415593, at *4 (Tex. App.—Houston [14th Dist.] Sept. 10, 2020, no pet. h.) (mem. op.); *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 85 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("The TCPA's 'is based on, relates to, or is in response to' language captures, at a minimum, a 'legal action' that is factually predicated upon or relates to alleged conduct that would fall within the TCPA's definition of exercise of [a protected right].");  *Cavin v. Abbott*, 545 S.W.3d 47, 69 (Tex. App.—Austin 2017, no pet.).

The factual predicate for the fraudulent misrepresentation and promissory estoppel claims is that Enterprise falsely promised to research the required setback between the additional tanks and Sealy Partners' property and provide Sealy Partners with any plans for the construction of new oil tanks before construction was to begin. As we have stated, the alleged misrepresentations and promises by

---

[8] The legislature recently deleted the phrase "relates to" from the statute, which now permits a party to file a motion to dismiss a legal action if it is "based on or is in response to" the party's exercise of a TCPA-protected right. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 2; Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 27.005(b) (West 2019).

Enterprise attendant to the proposed construction were an exercise of Enterprise's right to petition as defined by the TCPA. We can say comfortably that Sealy Partners' fraudulent misrepresentation and promissory estoppel claims directly challenging those communications are factually predicated on, and thus based on, Enterprise's exercise of the right to petition. *See Schimmel*, 438 S.W.3d at 858.

Less straightforward is whether the nuisance and tortious interference claims are based on, related to, or in response to Enterprise's right to petition. As to those claims, we place particular attention on the Act's phrase "relates to" because it casts the widest net, and if Sealy Partners' nuisance and tortious interference claims are "related to" Enterprise's exercise of its right to petition then the TCPA applies to those claims. As with any statutory term the legislature leaves undefined, we look to the word's common meaning. *See* Tex. Gov't Code § 311.011(a); *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 535-36 (Tex. 2016). "Related" is commonly defined as "[c]onnected in some way; having relationship to or with something else." *CHRISTUS Health*, 505 S.W.3d at 535-36 (quoting Black's Law Dictionary 1479 (10th ed. 2014)). The phrase "relates to" has been defined as "to have a connection with, to refer to, or to concern." *Tex. Dep't of Pub. Safety v. Abbott*, 310 S.W.3d 670, 674-75 (Tex. App.—Austin 2010, no pet.). Applying these common understandings here, a plaintiff's claims are "related to" a protected communication when there exists "some sort of connection, reference, or relationship between them." *Cavin*, 545 S.W.3d at 69; *see also Reeves v. Harbor Am. Cent., Inc.*, --- S.W.3d ---, 2020 WL 2026527, at *6-7 (Tex. App.—Houston [14th Dist.] 2020, pet. filed) (claim was at least "related to" the exercise of TCPA-protected right when it was "closely and necessarily" intertwined with allegations that constituted the exercise of a TCPA-protected right); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV,

14

2018 WL 3118601, at \*8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). Courts have described this nexus as quite broad. *E.g.*, *Fla. Metal Prods., Inc. v. Kreder*, No. 10-18-00383-CV, 2020 WL 6071698, at \*3 (Tex. App.—Waco Oct. 14, 2020, no pet. h.) (mem. op.); *Grant v. Pivot Tech. Sols., Inc.*, 556 S.W.3d 865, 880 (Tex. App.—Austin 2018, pet. denied). We presume that the legislature intended to narrow the Act's reach by removing the "relates to" language during the last legislative session, but the Act's prior version applies here.

Although Sealy Partners does not complain about statements made in the permit applications, the applications necessarily go hand in hand with the construction process because Enterprise applied for the construction permits from the City of Sealy and could not have constructed the tanks without the permits.[9] The nuisance and tortious interference claims are predicated on the construction of the additional tanks, and we conclude those claims at least "have a connection with, refer to, or concern" Enterprise's permit applications because those communications resulted in the creation of a condition that Sealy Partners contends is a nuisance and tortiously interfered with their prospective contractual relationships. *See, e.g.*, *Reeves*, 2020 WL 2026527, at \*6-7 (claim was "related to" exercise of TCPA-protected right when it was "closely and necessarily" intertwined with other allegations that constituted the exercise of a TCPA-protected right; defendant could not have engaged in the challenged conduct without also engaging in protected communication) (citing *Abatecola*, 2018 WL 3118601, at \*7); *see also Grant*, 556 S.W.3d at 880 ("[B]ased on the ordinary meaning of the terms, a plaintiff's claims are 'related' to a protected

---

[9] In the factual background section of its live pleading, Sealy Partners asserted that "Defendants signed the permit application for the construction of five above ground storage tanks, designed to store enormous amounts of combustible and hazardous petroleum products."

communication when there is 'some sort of connection, reference, or relationship between them.'") (quoting *Cavin*, 545 S.W.3d at 69).

Additionally, the nuisance and tortious interference claims relate to the alleged misrepresentations made during the January 2016 meeting. Both claims have a connection with, refer to, or concern the communications because the statements allegedly were made in furtherance of the plans to construct the additional tanks. Moreover, the tortious interference claim is related to the communications because Sealy Partners alleges the statements were made falsely to prevent Sealy Partners' development from occurring and to reap financial benefits for Enterprise by constructing the new tanks. Thus, Sealy Partners' nuisance and tortious interference claims are related to Enterprise's exercise of the right to petition.

Finally, all the communications underlie the conspiracy allegation. So that theory is based on, related to, or in response to Enterprise's exercise of the right to petition as well.

For these reasons, we hold that Enterprise proved by a preponderance of the evidence that Sealy Partners' nuisance, fraudulent misrepresentation, tortious interference, promissory estoppel, and civil conspiracy claims against it are based on, related to, or in response to, Enterprise's exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 27.005(b); *Cavin*, 545 S.W.3d at 69 (noting that under the plaintiffs' theory of the case, all of the defendants' complained-of acts, even those not factually predicated on communications, were portrayed as related components of other TCPA-protected communications). The TCPA applies to these claims.

16

### 2. *Sealy Partners' claims against ECGP*

Sealy Partners asserted against ECGP the same claims it asserted against Enterprise. Regarding the fraudulent misrepresentation, promissory estoppel, and conspiracy claims, Sealy Partners alleged that ECGP representatives made the same misrepresentations as Enterprise did at the January 2016 meeting. As we have explained, the alleged statements—whether made by ECGP or Enterprise—constitute communications allegedly made "in connection with an issue under consideration or review by a . . . governmental body or in another governmental or official proceeding," or were "reasonably likely to encourage consideration or review of an issue by a . . . governmental body or in another governmental or official proceeding." Tex. Civ. Prac. & Rem. Code § 27.001(4)(B), (C). Thus, ECGP's alleged statements qualify as an exercise of the right to petition. *See Schimmel*, 438 S.W.3d at 858.

Moreover, as we have concluded regarding identical claims against Enterprise, Sealy Partners' claims against ECGP for nuisance, tortious interference, fraudulent misrepresentation, promissory estoppel, and conspiracy, at least have a connection to, refer to, or concern ECGP's alleged misstatements and false promises regarding construction of the tanks. Therefore, those claims are related to ECGP's exercise of its right to petition, and the TCPA applies to them.

Insofar as the claims against ECGP are concerned, we do not base any part of our analysis on communications contained in the permit applications. The evidence shows conclusively that Enterprise—not ECGP—applied for and received the permits. Thus, the permit applications were not "communications" by ECGP and hence not an exercise of the right to petition by ECGP. For purposes of step one of the TCPA analysis regarding Sealy Partners' claims against ECGP, we rely solely on the alleged communications made during the January 2016 meeting.

17

Sealy Partners' final claim is for trespass. Unlike Enterprise, ECGP challenges on appeal the trial court's refusal to dismiss the trespass claim. ECGP argues that the trespass claim should be dismissed because Sealy Partners did not meet its prima facie burden in support of that claim. But we would reach that issue only if the TCPA applies. ECGP does not argue that the TCPA applies to the trespass claim, and we conclude it does not. The factual predicate for the trespass claim is that ECGP removed Sealy Partners' existing wooden fence and installed a new chain-link fence with razor wire, without prior notice or consent. There is no allegation or evidence as to when this occurred or that the alleged trespass was related to the construction of the additional tanks, as opposed to merely enhancing security around Enterprise's property. There is no allegation of a "communication" made by ECGP in connection with the trespass claim. We cannot say on this record that Sealy Partners' trespass claim is based on, related to, or in response to ECGP's exercise of any TCPA-enumerated right, and therefore the TCPA does not apply to the trespass claim.

*      *      *

In sum, we hold the following regarding the first step in the TCPA analysis. Enterprise and ECGP proved by a preponderance of the evidence that the TCPA applies to the nuisance, fraudulent misrepresentation, tortious interference, promissory estoppel, and civil conspiracy claims asserted against them. But ECGP did not prove by a preponderance of the evidence that the TCPA applies to the trespass claim asserted against it.

Thus, the trial court did not err in denying ECGP's TCPA motion to dismiss the trespass claim against ECGP because the TCPA does not apply to that claim. Before we can decide whether the trial court erred in refusing to dismiss the

18

remaining claims against both appellants, we must proceed to the second step under the TCPA framework as to those claims.

## C.  Did Sealy Partners meet its burden to establish a prima facie case for each claim to which the TCPA applies?

We must now determine whether Sealy Partners met its burden to establish by clear and specific evidence a prima facie case for each essential element of their claims against Enterprise and ECGP to which the TCPA applies.  Tex. Civ. Prac. & Rem. Code § 27.005(c).  "A prima facie case is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'"  *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016) (quoting *Lipsky*, 460 S.W.3d at 590).  We address each claim in turn.

### 1.  *Nuisance*

As the Supreme Court of Texas has recently reiterated, "[a] 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it."  *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 600 (Tex. 2016) (internal quotation omitted).  The term "nuisance" refers not to a cause of action or to a defendant's conduct but to the legal injury that the conduct causes and that gives rise to the cause of action.  *Id.* at 604.  To establish a cause of action for which the law provides a right to relief, at least in the absence of circumstances giving rise to strict liability, "there must not only be an injury or loss but it must have been occasioned by the commission of a legal wrong, that is, violation of legal right and a breach of legal duty."  *Id.* at 601.  Nuisance liability, moreover, does not depend on whether the defendant "acted or used its property illegally or unlawfully."  *Id.*  Historically, the "goal of private-nuisance law is to identify whether and when the law will prohibit an owner's

19

*lawful* use, or require the owner to bear the legal cost of such use, because that lawful use causes a legal injury to another. *Id*. at 601 & n.12 (emphasis in original).

Whether a defendant may be held liable for causing a nuisance depends on (1) the culpability of the defendant's conduct, (2) whether the interference is a nuisance, and (3) whether the interference caused loss or damage. *Id*. at 601, 604-07. Enterprise and ECGP argue that Sealy Partners failed to establish by clear and specific evidence a prima facie case for each element.

a.  <u>Sealy Partners presented a minimum quantity of evidence that a nuisance exists</u>.

The most hotly contested issue regarding the nuisance claim is whether a nuisance exists at all, and we address that element first. An interference, or legal injury, constitutes a nuisance only if it is "substantial" and causes "discomfort or annoyance" that is "unreasonable." *Id.* at 595-99. Concerning unreasonableness, a plaintiff must establish that the effects of the substantial interference are unreasonable, not that the defendant's conduct or land use was unreasonable. *Id*. at 597. Additionally, whether the effects of interference are unreasonable is governed by an objective standard, accounting for numerous circumstance-based factors. *Id*. at 599-601.[10] The determination is generally one of fact. *See id.* at 600, 609. A

---

[10] These factors include, among others:

- the character and nature of the neighborhood, each party's land usage, and social expectations;
- the location of each party's land and the nature of that locality;
- the extent to which others in the vicinity are engaging in similar conduct in the use of their land;
- the social utility of each property's usage;
- the tendency or likelihood that the defendant's conduct will cause interference with the plaintiff's use and enjoyment of their land;
- the magnitude, extent, degree, frequency, or duration of the interference and resulting harm;

20

court may decide these issues as a matter of law only if the underlying facts are undisputed or, if in light of all the evidence, "reasonable minds cannot differ." *Id*. at 609.

Appellants argue that today's case is just the sort where reasonable minds cannot differ because a potential "blast zone" resulting from the construction of the new tanks and encircling most of Sealy Partners' property does not constitute a nuisance as a matter of law. According to appellants, Sealy Partners cannot recover under a nuisance theory because it is seeking damages for "emotional harm," which, appellants say, is not permissible. Their banner case is *Maranatha Temple, Inc. v. Enterprise Products Co.*, 893 S.W.2d 92 (Tex. App.—Houston [1st Dist.] 1994, writ denied), where the court stated that the plaintiff had no viable claim for nuisance against the owners or operators of petrochemical or hydrocarbon facilities or pipelines that were part of a nearby underground storage facility. *Id.* at 95. There, the court held that a nuisance claim is not allowed when the only alleged injury is "fear, apprehension, or other emotional reaction that results from the lawful operation of industries in Texas." *Id*. at 100. "Persons who are apprehensive that one day in the future an industrial accident will harm them or their property" could not sue for their apprehension alone. *Id.* The court was concerned about a "torrent of litigation" if those who have "not been harmed in their land or body" were allowed nuisance recovery from Texas energy-industry owners who have not used their land unlawfully. *Id*.

---

- the relative capacity of each party to bear the burden of ceasing or mitigating the usage of their land;
- the timing of each party's conduct or usage that creates the conflict;
- the defendant's motive in causing the interference; and
- the interests of the community and the public at large.

*See Crosstex*, 505 S.W.3d at 600. All of these factors must be "thrown into the scale," and the decision must be made on the basis of what is reasonable under the circumstances. *Id*.

Unlike the claimant in *Maranatha Temple*, however, Sealy Partners' alleged injury is not limited to emotional harm or apprehension alone. Not only does Sealy Partners disavow any desire to recover for emotional harm, it seeks economic damages for lost market value of its property and lost profit. Sealy Partners contends that the blast zone resulting from the construction, as calculated by its retained engineer, encompasses its land and has depreciated the land's property value to the point where the property can no longer be developed commercially. Recovery for similar harm has long been allowed in Texas under a nuisance theory. *Crosstex*, 505 S.W.3d at 610-11 (describing nuisance remedies, including lost rent and lost market value) (citing cases); *Comminge v. Stevenson*, 13 S.W. 556, 557 (Tex. 1890) (property owner could recover for lost rent and property depreciation caused by nuisance); *Burditt v. Swenson*, 17 Tex. 489, 504 (1856) (recovery allowed when nuisance impairs value of neighboring property). Contrary to appellants' view, moreover, recovery for economic harm in nuisance is available even absent invasion of, or trespass onto, another's property. *See Comminge*, 13 S.W. at 557; *McMahan v. City of Abilene*, 261 S.W. 455, 456 (Tex. App.—El Paso 1924) (op. on reh'g), *writ dism'd*, 292 S.W. 525 (Tex. 1927).

As these cases illustrate, conditions such as the one at issue can constitute a nuisance depending on the relevant circumstances. *See Crosstex*, 505 S.W.3d at 600. Courts have held, for example, that a horse stable,[11] an earthen dam,[12] a gunpowder magazine,[13] a cemetery,[14] and, significantly, oil storage tanks[15] can be a

---

[11] *Burditt*, 17 Tex. at 504.

[12] *McMahan*, 261 S.W. at 456.

[13] *Comminge*, 13 S.W. at 557.

[14] *Dunn v. City of Austin*, 11 S.W. 1125, 1127 (Tex. 1889).

[15] *Boren v. Magnolia Petroleum Co.*, 266 S.W. 623, 624 (Tex. App.—Texarkana 1924, no writ).

nuisance to nearby property owners. In *Boren*, the court rejected the claimant's right to enjoin the construction of two large oil storage tanks, but noted that the storage of oils may nevertheless constitute a nuisance in certain circumstances if "danger from fire or explosion therefrom is continuous and imminent or liable to occur and with consequent injury to the residences . . . , or greatly interfering with, if not entirely destroying, the proper enjoyment of such dwelling houses." *Boren*, 266 S.W. at 624. In *Burditt*, the court acknowledged that a horse stable is not inherently a nuisance but may become so if by proximity it impairs the value of nearby property. *Burditt*, 17 Tex. at 504.

In another notable case, the owner of a gun-powder magazine argued, like appellants argue here, that the condition it created was not a nuisance as a matter of law. *Comminge*, 13 S.W. at 557. The plaintiff sued his neighbor, the Dupont Powder Company, for nuisance resulting from the maintenance of a gunpowder magazine, consisting of thousands of pounds of powder, located "between three and four hundred feet from plaintiff's residence, on the prairie, uninclosed [sic], and surrounded by a growth of weeds, grass, and other vegetation indigenous to such outlying lands." *Id.* The plaintiff testified that before the magazine was placed there, he had rented his property for $75 and $100 per month, but he had not been able to rent it at any price since. *Id.* Other witnesses testified "to the depreciation in value of the property, and of its use, because of the proximity of the magazine." The supreme court held that the magazine and its contents constituted a private nuisance. *Id.* *Comminge* and like cases squarely refute Enterprise's argument.

Reference to the relevant factors outlined in *Crosstex* supports Sealy Partners' argument that the storage tanks can be objectively viewed as unreasonably affecting Sealy Partners' property. For example, Sealy Partners

23

planned to develop its property for both commercial and residential uses. Sealy Partners attached a letter from the City of Sealy, in which the city stated its opinion "that the City of Sealy is in need of additional multi-family units" and told Sealy Partners that its "project would help fulfill the need for multi-family housing in the City of Sealy." This letter is some evidence of the "social utility" of the planned use of its land, as well as evidence of the "interests of the community and the public at large." *Crosstex*, 505 S.W.3d at 600 (discussing substantial-interference and unreasonable-effects factors); *see also supra* note 10. Further, Sealy Partners alleged, and attached a letter supporting a reasonable inference, that appellants knew of Sealy Partners' planned development before construction began, which is evidence of the "timing of each party's conduct or usage that creates the conflict." *Crosstex*, 505 S.W.3d at 600. The opinion from Sealy Partners' engineer that "no portion of the Sealy parcel is capable of being built upon without being affected by the impact zones of the Enterprise tanks" is some evidence of the "tendency or likelihood" that the conduct will cause interference with Sealy Partners' use and enjoyment of its land, as well as of the "magnitude, extent, degree, frequency, or duration of the interference and resulting harm." *Id.*

We therefore disagree with appellants that the effect of the conduct at issue is not a nuisance as a matter of law. For purposes of the threshold testing of Sealy Partners' claims under the TCPA rubric, we conclude that Sealy Partners presented clear and specific evidence to support a rational inference that the conduct created the kind of substantial interference and unreasonable effects that may constitute a nuisance. *See Crosstex*, 505 S.W.3d at 595; *Comminge*, 13 S.W. at 557; *see also Boren*, 266 S.W. at 624.

24

b.	Sealy Partners presented evidence of Enterprise's, but not ECGP's, negligent culpability.

There are three categories of culpable conduct for which an actor may be liable in nuisance: intentional nuisance, negligent nuisance, and strict-liability nuisance. *Id.* at 604-08. Sealy Partners alleged that Enterprise and ECGP are liable under intentional and negligent standards.

i.	Intentional nuisance

A defendant may be liable for intentionally causing a nuisance based on proof that the actor intentionally created or maintained a condition that substantially interferes with the claimant's use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Id.* at 604-05. "Intent" in this context, as in most legal contexts, means that "the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985) (internal quotation omitted). A defendant intentionally causes a nuisance "if the defendant 'acts for the purpose of causing' the interference or 'knows that [the interference] is resulting or is substantially certain to result' from the defendant's conduct." *Crosstex*, 505 S.W.3d at 605 (quoting Restatement (Second) of Torts § 825). Thus, a plaintiff may establish intent with proof that the defendant acted with a specific intent to inflict injury, a malicious desire to do harm by causing the actionable interference, or a belief that the interference was substantially certain to result from the defendant's conduct. *Id*. Importantly, intent is measured by a subjective standard, meaning that whether a defendant reasonably should have known that the interference would result is not sufficient. *Id*.

In its response to appellants' motions to dismiss, Sealy Partners presented no argument or evidence that Enterprise or ECGP intentionally caused interference with Sealy Partners' use and enjoyment of its land, or subjectively believed that interference was substantially certain to result from its conduct. Thus, Sealy Partners failed to make a prima facie case supporting its intentional nuisance claim, and appellants are entitled to dismissal of that claim.

ii. Negligent nuisance

A defendant can be liable for negligently causing a nuisance. *Id*. at 607. Culpability under a negligent nuisance theory is governed by ordinary negligence principles. *Id.* The elements the plaintiff must prove are "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Id*.; *IHS Cedars Treatment Ctr., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). To establish a breach, the plaintiff must prove that the defendant's conduct constituted negligence, which is "simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done." *Crosstex*, 505 S.W.3d at 607. A nuisance may result from "a failure to take precautions against a risk apparent to a reasonable man." *Id*.

We address duty first. The existence of a duty generally is a legal question. *St. Anthony's Minor Emergency Ctr., L.L.C. v. Ross Nicholson 2000 Separate Prop. Tr.*, 567 S.W.3d 792, 799 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Enterprise's duty to Sealy Partners is not seriously disputed here, as Texas law has long imposed on all persons, in the use of one's property, a duty to exercise ordinary care to avoid injury or damage to the property of others. *Crosstex*, 505 S.W.3d at 614; *see also Elliff v. Texon Drilling Co.*, 210 S.W.2d 558, 563 (Tex. 1948). Here, Enterprise, a landowner, owed a duty to Sealy Partners, an adjoining landowner.

Next, Sealy Partners had to present clear and specific evidence that Enterprise did or failed to do what a person of ordinary prudence would have done in the same or similar circumstances. *Crosstex*, 505 S.W.3d at 614. Whether a defendant negligently created a nuisance generally presents a question of fact for a jury to decide. *Id.* at 609. Sealy Partners presented evidence showing that Enterprise constructed additional storage tanks resulting in a surrounding blast zone that encompassed the majority of Sealy Partners' property, which, according to evidence discussed below, resulted in a loss of property value and future profit. Evidence exists that when Enterprise requested the permits and began construction, it was aware that Sealy Partners owned the adjoining tract and planned to develop it for commercial use. There is also evidence that Sealy Partners agreed to relocate an easement and retention pond after Enterprise represented that it would research "setback" issues and not begin construction until communicating further with Sealy Partners regarding its research. Based on this proof, we conclude Sealy Partners presented a sufficient quantum of evidence necessary to support a rational inference that Enterprise's conduct in constructing the additional tanks was unreasonable, and thus Enterprise negligently created a nuisance. *See id*.

Appellants also argue that Sealy Partners' evidence fails as to the nuisance claim against ECGP because there is no evidence that ECGP constructed or owns the tanks or the property where the tanks are located. We agree. The evidence shows that Enterprise owns the land and applied for the building permits. Sealy Partners presented no evidence supporting a rational inference that ECGP had an ownership interest in the property or that it actually constructed the storage tanks. Thus, we conclude that Sealy Partners failed to present clear and specific evidence supporting a duty on ECGP's part, or that ECGP engaged in any conduct allegedly creating a nuisance.

c.     Sealy Partners presented evidence of damages.

In its TCPA response, Sealy Partners asserted that it provided "clear and specific evidence that the market value of their land was reduced substantially as a result of [Enterprise's] breach of duty. *Exhibit 3*; *Exhibit 4*."

A claimant who prevails on a private-nuisance claim may recover damages. *Crosstex*, 505 S.W.3d at 610.  If a nuisance is permanent, the owner may recover lost market value—a figure that reflects all losses from the injury, including lost rents expected in the future. *Id*.  The value "'should be ascertained at the date of trial, and it should be the market value of the property for any use to which it might be appropriated.'" *Id*. at 611 (quoting *Sherman Gas & Elec. Co. v. Belden*, 123 S.W. 119, 121 (Tex. 1909)).  That is, "'the jury is permitted to consider all of the uses to which the property is reasonably adaptable and for which it is, or in all reasonable probability will become, available within the foreseeable future.'" *Id*. (quoting *State v. Windham*, 837 S.W.2d 73, 77 (Tex. 1992)).  However, a jury may not consider "purely speculative uses." *Id*.

Exhibit 3 is an affidavit from Wayne Dalcin, a real estate broker, who offered "a broker's opinion regarding the loss suffered by Sealy Partners, LLC as a result of not being able to complete the project planned due to the scope of a blast zone related to above ground storage tanks on property adjacent" to Sealy Partners' land.  Dalcin opined that Sealy Partners suffered a loss as a result of not being able to develop its parcel in the manner intended, although it is unclear from Dalcin's report precisely what Dalcin calculated the lost market value to be.[16]

---

[16] Other evidence attached to Sealy Partners' response indicates that Sealy Partners projected its revenue from the project, as would-be completed, to equal $11,075,708, compared to a land value of $5,201,036.

Exhibit 4 is an affidavit from Lucky Srinivasan, a broker involved in Sealy Partners' efforts to obtain financing for its planned development. Srinivasan testified that it was his "strongly held opinion that the Sealy Partners property would have gone forward to completion had it not been for the construction of Enterprise's ASTs with blast zones that consumed the 16 acre parcel" and that he was "confident that no traditional lender will ever touch any development of this parcel rendering it completely unusable for development purposes." After Enterprise argued at the TCPA hearing that Sealy Partners' evidence did not show that it could not obtain any funding, whether HUD-assisted or not, Sealy Partners submitted a second affidavit from Srinivasan, who testified that he, on behalf of Sealy Partners, attempted to obtain non-HUD-insured financing for the development of the property but that his "attempts to obtain this financing at a rate anywhere close to what would be required to make the Sealy Partners' intended development economically feasible were not successful."

Sealy Partners presented clear and specific evidence that "no portion of the Sealy parcel is capable of being built upon without being affected by the impact zones of the Enterprise tanks." Like in *Comminge*, this evidence suffices to show that the construction of the tanks and the resulting blast zone is "a thing that worketh hurt, inconvenience, and damage" to Sealy Partners' property. *Comminge*, 13 S.W. at 557 (internal quotation omitted).

Enterprise globally contends that Sealy Partners' damages evidence is insufficient because Sealy Partners has not provided clear and specific evidence of its alleged inability to obtain financing, HUD-assisted or otherwise. Enterprise argues that all of Sealy Partners' affidavits are conclusory:

> The record is completely devoid of any applications for financing, HUD-assisted or otherwise; documents that were submitted to a financial institution in support of financing; correspondence or emails

29

with financial institutions regarding financing; rejections or denial of financing; and testimony from personnel at any financial institution that Sealy Partners allegedly approached regarding financing.

Sealy Partners' prima facie burden is not as demanding as Enterprise asserts. The quantum of evidence required is no more than that which is "necessary to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W.3d at 590. Sealy Partners has met this burden by providing some clear and specific evidence that it cannot develop its property as planned due to an inability to obtain any economically feasible financing, and a resulting loss in market value and future lost rents. Contrary to Enterprise's assertion, Srinivasan's testimony that his "attempts to obtain this financing . . . were not successful" is not conclusory. Enterprise may attempt to rebut, contradict, or otherwise impeach Sealy Partners' evidence of damages at a later date, but Sealy Partners is not required to marshal all of its evidence in this TCPA proceeding. Sealy Partners has provided sufficient evidence to support a rational inference of damages for its negligent nuisance claim. *See Lipsky*, 460 S.W.3d at 592-93; *see also Price v. Buschemeyer*, No. 12-17-00180-CV, 2018 WL 1569856, at *14 (Tex. App.—Tyler Mar. 29, 2018, pet. denied) (mem. op.) ("[The plaintiff] need show only how Appellants caused his damages, and that he in fact suffered damages, not the specific amounts of losses with exactitude.") (citing *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)).

For these reasons, we conclude that the trial court did not err in refusing to dismiss the negligent nuisance claim against Enterprise, but the court erred in refusing to dismiss the negligent nuisance claim against ECGP.

## 2. *Fraudulent misrepresentation*

A plaintiff asserting a claim for fraudulent misrepresentation must prove the following elements: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the plaintiff act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). When, as here, the representation at issue "'involves a promise to do an act in the future,' the plaintiff also has to prove that, at the time the defendant made the promise, the defendant 'had no intention of performing the act.'" *Spencer v. GC Servs. Ltd. P'ship*, No. 01-12-00159-CV, 2013 WL 1908160, at *7 (Tex. App.—Houston [1st Dist.] May 7, 2013, pet. denied) (mem. op.) (quoting *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992)).

In response to appellants' motions to dismiss, Sealy Partners asserted that the basis for its fraudulent misrepresentation claim was Enterprise's and ECGP's promise that they "would research the required separation distance between the parties' developments, communicate that information with [Sealy Partners], and provide [Sealy Partners] with construction plans before [appellants] began their development." According to Sealy Partners, it relied on those promises by enlisting a team of experts to assist in planning the new development, and appellants' misrepresentations damaged Sealy Partners "in the form of lost profits, both in the sale of [its] property and in the lost revenues expected from the businesses which would be developed thereon."

However, Sealy Partners did not present any evidence that at the time appellants purportedly promised to research the required separation distance, communicate that information, or provide construction plans, they had no intention of performing the promised acts, or that they knew the representation was false or made recklessly, or that they made the promise with the intent for Sealy Partners to act on it. *See, e.g.*, *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 89-91 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (because evidence was silent about whether movants knew, at the time, that their alleged promises to perform in the future were false, court held that movants were entitled to dismissal of nonmovant's fraud claim under the TCPA); *see also Spencer*, 2013 WL 1908160, at *7 (holding that plaintiff did not raise a fact issue, for summary judgment purposes, when he never presented any evidence to the trial court concerning defendant's intent not to perform, nor did he make any argument for why the evidence that he did present constituted evidence of intent not to perform). We hold that Sealy Partners failed to present clear and specific evidence for each essential element of its fraudulent misrepresentation claim against both Enterprise and ECGP. Thus, Enterprise and ECGP are entitled to dismissal of those claims.

3. *Tortious interference*

A party asserting a claim for tortious interference with a prospective business relationship must prove: (1) a reasonable probability that there would have been a contractual relationship; (2) an "independently tortious or unlawful" act by the interfering party that prevented the relationship from occurring; (3) the interfering party did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the claimant suffered actual harm or damage proximately caused by the interference. *Wal-Mart Stores, Inc. v. Sturges*,

32

52 S.W.3d 711, 726 (Tex. 2001); *Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations . . . ." *Sturges*, 52 S.W.3d at 726.

Regarding the third element pertaining to appellants' knowledge or intent, Sealy Partners argued in its TCPA response that "there is circumstantial evidence of this fact by virtue of [appellants'] status as a large oil and gas company that regularly engages in these types of negotiations with land owners." Not only did Sealy Partners not submit any evidence in support of this assertion, but the proposition is conclusory at best. Conclusory statements are not probative evidence and accordingly will not suffice to establish a prima facie case. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also Lipsky*, 460 S.W.3d at 592 (explaining that "bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA").

We conclude that Sealy Partners failed to present clear and specific evidence for each essential element of its tortious interference claim against Enterprise and ECGP.

4.    *Promissory estoppel*

Although promissory estoppel is generally used as a defensive theory, it may be asserted as an affirmative claim for damages. *See Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The elements of a promissory estoppel claim are a promise, the promisor foreseeing that the promisee will rely on the promise, and detrimental reliance by the promisee. *Simulis, LLC. v. Gen. Elec. Capital Corp.*, No. 14-06-00701-CV,

2008 WL 1747483, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no. pet.) (mem. op.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise. *English*, 660 S.W.2d at 524.

In the section of its TCPA response addressing the prima facie case for its promissory estoppel claim, Sealy Partners did not address the claim's third element by explaining how its reliance was detrimental or by directing the court to evidence establishing detrimental reliance. However, in another section of its response Sealy Partners asserted it "relied on [appellants'] representations . . . by moving forward with their development plans . . . [and] enlist[ing] architects, engineers, a general contractor, a property management company, and a title company to create development plans and obtain financing for the project. Those individuals do not work for free." In support, Sealy Partners cited Srinivasan's affidavit, in which he testified that he "assembled a team of HUD qualified experts," although he did not state how much, if anything, each expert was paid.

Srinivasan's affidavit does not present clear and specific evidence that Sealy Partners materially changed its position in reliance on appellants' promises. Sealy Partners' live pleading establishes that it had already planned to develop its property before appellants made the alleged promises at the January 2016 meeting. *See Hernandez v. Gallardo*, 594 S.W.3d 341, 349 (Tex. App.—El Paso 2014, pet. denied) (summary judgment proper on promissory estoppel claim when plaintiff failed to present evidence that she materially changed her position in reliance on promise). Sealy Partners presented no evidence that, had appellants not made the alleged promises, Sealy Partners would not have incurred expenses in hiring "HUD

34

qualified experts." *See English*, 660 S.W.2d at 524 (no promissory estoppel when plaintiff could not show that he would not have taken his detrimental actions if defendant had not made promise); *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753-54 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (failure to seek another job was insufficient to show detrimental reliance on employer's stock option letter; employee required to show that, but for the letter, he would have stopped working for employer). Nor does Sealy Partners' evidence show that because of the alleged false representations it took some concrete action that it would not otherwise have taken. Because Sealy Partners presented no argument or evidence that it materially changed its position in reliance upon appellants' alleged promises, we conclude that Sealy Partners did not present a prima facie case for its promissory estoppel claims.

5.      *Civil conspiracy*

Civil conspiracy is a theory to secure joint and several liability against a member of a conspiracy for the harm caused by any one member of the conspiracy. *Cooper v. Trent*, 551 S.W.3d 325, 335 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see also Energy Maint. Servs. Grp. I, LLC v. Sandt*, 401 S.W.3d 204, 220 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, civil conspiracy is not a "stand alone" tort but rather derives from independent, underlying tortious conduct. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). A defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Cooper*, 551 S.W.3d at 335.

The elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *PAS, Inc. v. Engel*, 350 S.W.3d 602, 616 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)).

To the extent that the allegedly unlawful, overt acts underlying Sealy Partners' civil conspiracy claim are the alleged misrepresentations or false promises, the conspiracy allegation necessarily fails because we have already concluded that Sealy Partners failed to present a prima facie case for these alleged torts.[17] *See, e.g.*, *Jones v. Rabson & Broocks, L.L.C.*, No. 01-01-01210-CV, 2003 WL 302439, at *4 (Tex. App.—Houston [1st Dist.] Feb. 13, 2003, no pet.) (mem. op.) (affirming summary judgment dismissing civil conspiracy claim, because court previously held that there was no theft and thus plaintiff could not show that there was an overt, unlawful act upon which a conspiracy could have rested).

Moreover, to the extent Sealy Partners alleges that Enterprise and ECGP conspired to create a nuisance to prevent the development of Sealy Partners' land, Sealy Partners presented no clear and specific evidence that two or more persons reached a meeting of the minds to accomplish that object.

Sealy Partners contends that Enterprise and ECGP were conspirators based at least on the factual allegation that representatives from both entities were present at the January 2016 meeting. Throughout its First Amended Petition, Sealy Partners refers to Enterprise and ECGP collectively as "Defendants" and does not

---

[17] According to Sealy Partners' TCPA response, Gene Svoboda's affidavit satisfied the element of an unlawful act, because his testimony established that appellants made false representations during the January 2016 meeting regarding researching the separation distance and providing construction plans. This is the same factual basis for Sealy Partners' fraudulent misrepresentation and promissory estoppel claims.

distinguish between them. Sealy Partners' evidence in response to the motion to dismiss, however, does not identify any ECGP representative who attended the meeting. Gene Svoboda, Sealy Partners' representative, named two attendees, Joe Cunningham and Thomas Goolsby, as representatives of "Enterprise." In an attached email from the city engineer that lists the meeting attendees, Cunningham is identified as representing "Enterprise Crude Pipeline (ECP)," while Goolsby is said to be of "Percheron – Rep. for Enterprise." In another affidavit in the record, Goolsby describes himself as a custodian of records for "Enterprise Crude Pipeline LLC." Thus, the only evidence of Cunningham's and Goolsby's affiliation is that they are representatives of Enterprise Crude Pipeline LLC, which is appellant Enterprise. Sealy Partners does not dispute these descriptions and indeed relies on the city engineer's email. Moreover, throughout its responsive evidence, Sealy Partners asserts that "Enterprise" owns the property, signed the permit applications, and constructed the tanks. As we have explained, the permit applications identify appellant Enterprise Crude Pipeline, LLC as the applicant and the property owner. We have reviewed the record thoroughly and none of the evidence attached to Sealy Partners' response mentions ECGP, states the relationship between Enterprise and ECGP, or identifies any representative of ECGP who participated in any of the complained-of conduct, whether occurring during the January 2016 meeting or at any other time.

Among other elements, a civil conspiracy requires a meeting of the minds between two or more persons. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995). A single person or entity cannot conspire with itself. *See Crouch v. Trinque*, 262 S.W.3d 417, 426-27 (Tex. App.—Eastland 2008, no pet.) (discussing principle that corporation cannot conspire with itself); *Atlantic Richfield Co. v. Misty Prods*., 820 S.W.2d 414, 420-21 (Tex. App.—Houston [14th

37

Dist.] 1991, writ denied) (citing *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 5 (Tex. App.—Corpus Christi 1991, no writ) (holding that, as a matter of law, a corporation cannot conspire with itself), *abrogated on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994)). Sealy Partners has presented clear and specific evidence that Enterprise representatives attended the meeting that forms the basis of its conspiracy claim, but it has not presented evidence that any other defendant also attended. Nor has Sealy Partners offered any proof that ECGP was otherwise involved in any of the challenged conduct to any extent that would support an inference that a meeting of the minds occurred between Enterprise and ECGP. *See, e.g.*, *Alford v. Thornburg*, 113 S.W.3d 575, 588 (Tex. App.—Texarkana 2003, no pet.); *Kemp v. Harrison*, 431 S.W.2d 900, 905 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (civil conspiracy may be shown by circumstantial evidence). Therefore, we conclude that Sealy Partners offered no clear and specific evidence that two or more persons reached a meeting of the minds to accomplish the asserted object of conspiring to create a nuisance.

Accordingly, Sealy Partners did not present a prima facie case for its conspiracy allegation, and appellants are entitled to dismissal of that allegation.

**Conclusion**

In sum, we hold that the TCPA applies to the claims against Enterprise for nuisance, fraudulent misrepresentation, tortious interference, promissory estoppel, and civil conspiracy. Sealy Partners presented prima facie evidence in support of its negligent nuisance claim; thus, the trial court did not err in denying Enterprise's motion to dismiss that claim. Sealy Partners failed to present prima facie evidence to support its intentional nuisance, fraudulent misrepresentation, tortious interference, promissory estoppel, and civil conspiracy claims. Enterprise is entitled to dismissal of those claims, its costs and reasonable and necessary

attorney's fees incurred as to those claims, and sanctions, if any. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a); *see also O'Hern v. Mughrabi*, 579 S.W.3d 594, 606 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Because Enterprise does not challenge the trial court's order as to the trespass claim, we leave undisturbed the trial court's refusal to dismiss that claim. On remand, Sealy Partners' remaining live claims against Enterprise are negligent nuisance and trespass.

Regarding ECGP, the trial court did not err in denying ECGP's TCPA motion to dismiss the trespass claim because the TCPA does not apply to that claim. We hold that the TCPA applies to the remainder of Sealy Partners' claims against ECGP but that Sealy Partners failed to present prima facie evidence to support its nuisance, tortious interference, fraudulent misrepresentation, promissory estoppel, and civil conspiracy claims against ECGP. ECGP is entitled to dismissal of those claims, its costs and reasonable and necessary attorney's fees incurred as to those claims, and sanctions, if any. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a). On remand, Sealy Partners' only remaining live claim against ECGP is for trespass.

The trial court's order is affirmed in part and reversed in part as set forth above. We remand the cause to the trial court for further proceedings consistent with this opinion.


/s/     Kevin Jewell
        Justice

Panel consists of Justices Christopher, Jewell, and Hassan.

39